# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENT CLARK,<br><br>                  Petitioner,<br><br>v.<br><br>J. GASTELO, Warden,<br><br>                  Respondent. | Case No.: 16CV1803-AJB(JMA)<br><br>**REPORT AND RECOMMENDATION TO GRANT RESPONDENT'S MOTION TO DISMISS** |

Petitioner Brent Clark is a state prisoner, proceeding without counsel, with a petition for a writ of habeas corpus ("Petition") pursuant to 28 U.S.C. § 2254. [Doc. No. 1.] Petitioner challenges his 2004 conviction for kidnapping for robbery, Cal. Pen. Code § 209(b)(1); forcible copulation, Cal. Pen. Code § 288a(c)(2); robbery, Cal. Penal Code § 211; and burglary, Cal. Penal Code § 459. [*Id.*] Respondent has filed a motion to dismiss, arguing the Petition must be dismissed because Petitioner's claims are barred by the one-year statute of limitations. [Doc. No. 10.] On January 17, 2017, Petitioner filed a brief in opposition to the motion to dismiss, contending that his Petition should be considered timely because he is entitled to equitable tolling, and on March 20, 2017, he filed supplemental exhibits in support of his equitable tolling argument. [Doc. Nos. 15 & 16.] After careful consideration, the undersigned determined the Court's record

was insufficient and allowed Petitioner the opportunity to further develop the record. [Doc. No. 17.]

Thereafter, Petitioner filed a supplemental brief and lodged some additional medical records, but not his compete file for the relevant time period. [Doc. Nos. 27 & 31.] In a separately filed motion he explained that although he was in possession of his complete CDCR mental health file, due to the large number of documents (estimated to be 800-1200 pages), he could not provide the Court and Respondent with a full and complete set without an order directing California Men's Colony State Prison to make the copies. [Doc. No. 37.] In the interim, counsel for Respondent independently obtained a full and complete copy of Petitioner's mental health records from CDCR. The Court ordered, therefore, Respondent to file under seal and serve on Petitioner a complete copy of Petitioner's CDCR mental health records and, to avoid a duplication of efforts, denied Petitioner's motion for copies without prejudice. [Doc. No. 38.] Once the medical records were filed, the Court allowed Petitioner the time and opportunity to review the records provided by Respondent and further supplement the record if he determined the Court's record was still not complete. [Doc. Nos. 41, 42.] Petitioner did not file any further briefing or medical records. On December 6, 2017, Respondent filed a supplemental reply brief. [Doc. No. 43.] Having considered the parties' briefing and Petitioner's CDCR mental health records for the relevant time period, the Court RECOMMENDS Respondent's motion to dismiss be GRANTED, as explained below.

I. **Introduction and Procedural Background**

Petitioner's efforts to challenge his conviction commenced with an appeal to the California Court of Appeal, in which he argued the trial court erred by: (1) failing to conduct a fifth hearing on his competency to stand trial; and (2) granting his request for self-representation despite his incompetence. [Doc. No. 11-1, Lod. No. 1.] The Court of Appeal rejected these claims on the merits and affirmed the

judgment on January 25, 2008. Petitioner then petitioned the California Court of Appeal for review of both claims. [*Id.*] The California Supreme Court denied review on May 14, 2008. [Doc. No. 11-2, Lod. No. 2.]

The record indicates Petitioner did not take any further action to challenge his conviction for more than six years, until June 16, 2015, when he filed a motion in the San Diego Superior Court to modify his sentence by striking his restitution fine and reducing it to $200. [Doc. No. 11-3, Lod. No. 3.] The motion was denied on July 20, 2015. [*Id.*] Petitioner then filed a notice of appeal on August 4, 2015. [Doc. No. 11-4, Lod. No. 4.] The California Court of Appeal dismissed the appeal on September 3, 2015, finding the Superior Court's order was not appealable because it did not affect Petitioner's substantial rights, and noting the Superior Court lost jurisdiction to resentence Petitioner once the execution of his sentence commenced. [Doc. No. 11-5, Lod. No. 5.]

On January 21, 2016, Petitioner filed a habeas petition in the Superior Court, claiming (1) his trial and appellate counsel were ineffective in failing to raise and investigate issues relating to sentencing; (2) the trial court abused its discretion in failing to dismiss one or more strike allegations; (3) the trial court should not have permitted him to waive counsel because he was mentally incompetent; and (4) the trial court should not have permitted him to represent himself because of his mental incompetence. [Doc. No. 11-6, Lod. No. 6.] On March 3, 2016, the Superior Court found the habeas petition was "procedurally barred for being untimely." [Doc. No. 11-7, Lod. No. 7, at 3-4.] The court also rejected Petitioner's ineffective assistance of counsel claims as conclusory and ruled Petitioner's sentencing error claim was "fatally flawed" because Petitioner was sentenced as a violent sex offender under California's One Strike law, Cal Pen. Code § 667.61, not as a recidivist under California's Three Strikes law, Cal. Pen. Code § 667(b)-(i). [*Id.* at 3-5.] Finally, the court found Petitioner's competency-related claims were not cognizable on habeas corpus because

| | |
|---|---|
| 1 | those claims were raised and rejected on direct appeal. [*Id.* at 5.] The next day, |
| 2 | March 4, 2016, the Superior Court denied Petitioner's second motion to modify |
| 3 | his sentence by reducing the restitution fine, ruling it did not have jurisdiction to |
| 4 | modify the sentence because more than 120 days had passed since sentencing, |
| 5 | and that Petitioner waived his right to challenge the restitution fine by failing to |
| 6 | object at sentencing. [Doc. No. 11-8, Lod. No. 8.] |
| 7 |      On March 28, 2016, Petitioner filed a notice of appeal in the California |
| 8 | Court of Appeal, challenging the Superior Court's denial of his motion to modify |
| 9 | his sentence. [Doc. No. 11-9, Lod. No. 9 at 2.] Two days later, on March 30, |
| 10 | 2016, he also filed a notice of appeal of the Superior Court's denial of his habeas |
| 11 | petition. [Doc. No. 11-10, Lod. No. 10.] On April 7, 2016, the Court of Appeal |
| 12 | addressed Petitioner's notice of appeal relating to the habeas petition, construing |
| 13 | the filing as a petition for writ of habeas corpus and denying habeas relief on the |
| 14 | basis his petition was untimely filed. [Doc. No. 11-11, Lod. No. 11.] The following |
| 15 | day, April 8, 2016, the Court of Appeal addressed Petitioner's attempt to appeal |
| 16 | the Superior Court's denial of his second motion to modify his sentence, |
| 17 | upholding the trial court's finding that it lacked jurisdiction to modify the sentence. |
| 18 | [Doc. No. 11-12. Lod. No. 12.] |
| 19 |      On April 25, 2016, Petitioner filed a habeas petition in the California |
| 20 | Supreme Court, raising the same claims that he raised in the habeas petitions |
| 21 | filed in the lower state courts. [Doc. No. 11-13, Lod. No. 13.] Thereafter, on May |
| 22 | 10, 2016, Petitioner also filed a petition for review with the California Supreme |
| 23 | Court, raising identical claims. [Doc. No. 11-14, Lod. No. 14.] The California |
| 24 | Supreme Court denied the petition for review on June 15, 2016, and on June 22, |
| 25 | 2016, it denied the habeas petition. In both cases, the Supreme Court's denial |
| 26 | was made without comment or citation to authority. [*Id.*] |
| 27 | / / |
| 28 | / / |

On July 6, 2016, Petitioner constructively filed the present Petition, raising the same claims that he raised in his state habeas petitions.[1] As discussed below, the Petition should be dismissed with prejudice because it is time-barred.

## II. The Petition is Time-Barred under the AEDPA

The AEDPA's one-year statute of limitations applies to Petitioner's federal habeas corpus claims. *Calderon v. U.S. District Court (Beeler)*, 128 F.3d 1283, 1286-87 (9th Cir. 1997), as amended on denial of rhg. and rhg. en banc, cert. denied, 522 U.S. 1099 (1998), overruled on other grounds in *Calderon v. U.S. District Court*, 163 F.3d 530 (9th Cir. 1998), cert. denied, 523 U.S. 1063 (1999). Pursuant to 28 U.S.C. § 2244(d)(1):

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of --
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

---

[1] *See Anthony v. Cambra*, 236 F.3d 568, 574-75 (9th Cir. 2000) (applying "mailbox rule" which provides for the constructive filing of court documents as of the date they are submitted to prison authorities for mailing to the court).

28 U.S.C. § 2244(d)(1)(A)-(D). Here, pursuant to 28 U.S.C. § 2244(d)(1)(A), the conclusion of direct review of Petitioner's conviction occurred on August 12, 2008, ninety (90) days after the California Supreme Court denied Petitioner's petition for review on May 14, 2008. See Rule 13(1), U.S. Sup. Ct. Rules; *Bowen v. Roe*, 188 F.3d 1157, 1159-60 (9th Cir. 1999). Accordingly, absent any applicable tolling, Petitioner had until August 13, 2009 to file his federal habeas petition. *Id.*; *Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001). Petitioner, however, did not constructively file his federal habeas petition until July 6, 2016, 7 years, 10 months and 23 days after his judgment became final. Thus, it is untimely unless Petitioner is entitled to statutory or equitable tolling for at least 6 years, 10 months and 23 days of this time period.

A. <u>**Statutory Tolling**</u>

The AEDPA tolls its one-year limitations period for the "time during which a properly filed application for State post-conviction or other collateral review . . . is pending." 28 U.S.C. § 2244(d)(2). "An application for post-conviction review is pending while a California petitioner completes a full round of state collateral review, including during the period between (1) a lower court's adverse determination, and (2) the prisoner's filing of a notice of appeal, provided that the filing of the notice of appeal is timely under state law." *Waldrip v. Hall*, 548 F.3d 729, 724 (9th Cir. 2008) (citations and internal quotations omitted, emphasis in original). In California, "[a]s long as the prisoner filed a petition for appellate review within a 'reasonable time,' he could count as 'pending' (and add to the 1-year time limit) the days between (1) the time the lower state court reached an adverse decision, and (2) the day he filed a petition in the higher state court." *Evans v. Chavis*, 546 U.S. 189, 193 (2006) (*citing Carey v. Saffold*, 536 U.S. 214, 222-23 (2002)). In the absence of a "clear indication that a particular request for appellate review [in state collateral review proceedings] was timely or untimely,

the [court] must itself examine the delay in each case and determine what the state courts would have held with respect to timeliness." *Chavis*, 546 U.S. at 197. It cannot be inferred from a decision on the merits, or a decision without explanation, that the California court concluded the petition was timely. *Banjo v. Ayers*, 614 F.3d 964, 968 (9th Cir. 2010) (*citing Chavis*, 546 U.S. at 194). "A California court's determination that a filing was untimely, however, is dispositive." *Id.* (*citing Saffold*, 536 U.S. at 226).

Here, no statutory tolling is available to Petitioner. His conviction became final on August 12, 2008, but he did not take measures to seek any post-conviction relief until June 16, 2015, more than six years and ten months later. Statutory tolling is unavailable where a petitioner files his first application for post-conviction review after the one-year statute of limitations has expired. *See Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001). Statutory tolling may only pause, not revive the statute of limitations. *Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003).

Furthermore, the post-conviction filings were not "properly filed," so as to warrant tolling. Petitioner's state habeas petitions were denied by the California courts as being untimely.[2] An application rejected by a state court as untimely is not "properly filed" for purposes of § 2244(d)(2). *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005). This is true even where, as here, the state courts also deny

---

[2] Petitioner's state habeas petitions were expressly denied by the Superior Court and Court of Appeal as being untimely. [Doc. No. 11-7, Lod No. 7 at 3-4; Doc. No. 11-11, Lod. No. 11 at 2, Thereafter, the California Supreme Court adopted the lower court's ruling and issued summary denials of the habeas petition and petition for review from the Court of Appeal's denial of the habeas petition. [Doc. No. 11-15, Lod. No. 15 & Doc. No. 11-16, Lod. No. 16.] *See, e.g., Ylst v. Nunnemaker*, 501 U.S. 797, 111 S. Ct. 2590, 2594-96, 115 L. Ed. 2d 706 (1991) ("look through" applies where a silent state appellate court order follows lower court's imposition of procedural default); *Townsend v. Knowles*, 562 F.3d 1200, 1205 (9th Cir. 2009) (looking though silent denials of California Supreme and court of appeal to trial court's untimeliness denial), abrogated on another ground by *Walker v. Martin*, 562 U.S. 307 (2011).

relief on other grounds, including the merits. *Bonner v. Carey*, 425 F.3d 1145, 1148-49 & n.13 (9th Cir. 2005).

Petitioner's motion for resentencing and subsequent appeal were also not "properly filed" for purposes of statutory tolling because the state courts lacked jurisdiction. [Doc. No. 11-5; Lodgment 5.] "If . . . an application is erroneously accepted by the clerk of a court lacking jurisdiction . . . it will be pending, but not properly filed." *Artuz v. Bennett,* 531 U.S. 4, 9 (2000); *See also Stone v. Martel,* No. CIV S-10-3454 KJM, 2011 WL 5828019, at *10 (E.D. Cal. Nov. 18, 2011) (motion for modification not properly filed where court lacked jurisdiction to provide requested relief.) (cf. Doc. Nos. 11-3 & 11-8, Lod. Nos 3 & 8 and Doc. Nos. 11-5 & 11-12, Lod. Nos. 5 & 12.) Petitioner is not, therefore, entitled to any statutory tolling and his federal habeas petition is time-barred unless he can show he is entitled to equitable tolling for at least 6 years, 10 months, and 23 days of the time that lapsed between when his judgment became final and the filing of his Petition.

## B. <u>Equitable Tolling</u>

The one year statute of limitations for filing a federal habeas petition may be equitably tolled if extraordinary circumstances beyond a prisoner's control prevent the prisoner from filing on time. *See Holland v. Florida*, 560 U.S. 631, 645 (2010). A petitioner seeking equitable tolling must establish two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). The diligence required is "reasonable diligence," not "maximum feasible diligence." *See Holland*, 560 U.S. at 653; *see also Bills v. Clark*, 628 F.3d 1092, 1096 (9th Cir. 2010).

The Ninth Circuit has articulated a specific, two-part test for an equitable tolling claim based on a petitioner's mental impairment:

/ /

(1) First, a petitioner must show his mental impairment was an "extraordinary circumstance" beyond his control by demonstrating the impairment was so severe that either

   (a) petitioner was unable to rationally or factually to personally understand the need to timely file, or

   (b) petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing.

(2) Second, the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance.

*Bills*, 628 F.3d at 1099-1100; *see also Orthel v. Yates*, 795 F.3d 935, 938 (9th Cir. 2015) ("A petitioner seeking equitable tolling on the grounds of mental incompetence must show extraordinary circumstances, such as an inability to rationally or factually personally understand the need to timely file, or a mental state rendering an inability personally to prepare a habeas petition and effectuate its filing.").

A petitioner alleging a severe mental impairment during the filing period is not entitled to an evidentiary hearing unless he or she makes "a good faith allegation that would, if true, entitle him to equitable tolling." *Laws v. Lamarque*, 351 F.3d 919, 921 (9th Cir. 2003) (remanding for consideration of whether the petitioner's delayed filing was "attributable to psychiatric medication which deprived Petitioner of any kind of consciousness" where the petitioner had demonstrated "evidence of serious mental illness" by attaching prison psychiatric and medical records); *Bills*, 628 F.3d at 1099-100 (remanding where the petitioner was in the lowest percentile for verbal IQ, verbal comprehension and working memory, and, according to clinical psychologists, was incapable of inferential thinking necessary to complete a federal habeas form); *see also*

*Orthel*, 795 F.3d at 939-40 ("Where the record is amply developed, and where it indicates that the petitioner's mental incompetence was not so severe as to cause the untimely filing of his habeas petition, a district court is not obligated to hold evidentiary hearings to further develop the factual record, notwithstanding a petitioner's allegations of mental incompetence.") (*quoting Roberts v. Marshall*, 627 F.3d 768, 773 (9th Cir. 2010).)

Here, Petitioner alleges he has been under the care of the prison mental health system for a "major mental illness" since November 2004. [Doc. No. 15, pp. 1-2.] He reports his diagnosis is Bipolar/Mood Disorder and Major Depression and during this time he has taken Zyprexa 15 mg, Depakote 1500 mg, Buspar 30 mg, Cogentin 2 mg, Lamictal 50 mg, Vistaril 100 mg, and Propranolon 10 mg. [*Id.* at 2.] He states his "mental illness coupled with the medications and there affects" created an "extraordinary circumstance" that made it "physically impossible" for Petitioner to pursue his claims in the judicial system. [*Id.*] He further represents his medications "have changed throughout the years causing at times "additional obstructions" due to side effects that "at times" have been suicidal thoughts and a deeper depression causing crisis bed observations and mental health transfers." [*Id.*] He also contends his medication has caused him to suffer from tremors of the hand and other parts of the body that, while physical in nature, have taken a mental and emotional toll that affected his concentration, reading and writing. [Doc. No. 27, pp. 5 of 12.] Petitioner's claims are supported by the declaration of Christopher Griffith, a self-described "jailhouse lawyer," who states he believes Petitioner's mental health circumstances prevented him from filing a federal habeas petition. [*Id.* Doc. No. 15, pp. 6-7.] Petitioner has also provided a declaration, in which he represents his medications have played a "major part" in preventing him from pursuing federal habeas relief. [Doc. No. 20.]

//

As explained above, the statute of limitations started running on August 13, 2008 and, absent any applicable tolling, Petitioner had until August 13, 2009 to file his federal habeas petition. During this time, Petitioner received regular psychiatric treatment; however, with one exception and for a period of only eight days, neither Petitioner's mental health, nor the side effects of his medication were so debilitating they could have prevented Petitioner from filing his Petition in a timely manner.

### ***Petitioner is not Entitled to Equitable Tolling from August 13 to November 12, 2008***

A progress note made on August 12, 2008, the day before the limitations period began to run, indicates Petitioner was alert, fully oriented and had fair insight. [Doc. No. 41, Lod. No. 17, Mental Health Records ("MHR") at 1499[3].] The psychiatrists he saw between August 13, 2009 and November 12, 2009, regularly observed Petitioner's thought processes were linear and goal directed [MHR 1498, 1489, 1478, 1476, 1477] and that he was stable on medication [MHR 1486-87, 1477, 1471-72]. He also participated in Social Skills/Communications Skills and Substance Abuse Medication Management Groups during this time, during which the group facilitators consistently observed Petitioner's cognition to be appropriate. [MHR 1492, 1494, 1496, 1482-85, 1473-75, 1471-72.] On October 10, 2008, Petitioner reported he was not having any overt psychological distress and his psychologist noted Petitioner demonstrated integration of positive coping skills. [MHR 1479.]

### ***Petitioner is Entitled to Equitable Tolling from November 13 – 20, 2008***

On November 13, 2008, about three months after the limitations period

---

[3] Lodgment No. 17 is referred to hereafter as "MHR" and the page numbers cited by the Court in reference to this submission are the Bates numbers that appear on the lower right hand corner of this filing.

began, Petitioner experienced a mental health crisis. That day he was assigned a GAF score of 29 and referred to a crisis bed.[4] [MHR 1469-1470.] Fortunately, Petitioner's condition improved thereafter. On November 20, 2008, he was assigned a GAF score of 45 and discharged.[5] [Doc. No. 31 at 5; MHR 1468.] The mental health progress notes from the Substance Abuse/Medication Management group he attended on November 21, 2008, indicate his cognition was appropriate and his insight was good. [MHR 1462.] He participated in other groups on November 24 and 25, 2008, at which time he was again observed to have appropriate cognition and good insight. [MHR 1465, 1467.] On November 26, 2008, he was seen by E.V. Roth, PhD, a psychologist, to whom he reported that he was "doing better now" and had "no further (mental health) complaints." [MHR 1463.] Dr. Roth opined that Petitioner was stable on medication and had appropriate cognition. [*Id.*] He was also seen by a staff psychiatrist that day, who observed his thought process to be linear and goal directed and assigned him a GAF score of 50. [MHR 1464.] The period during which Petitioner was incapacitated and unable to pursue federal habeas relief was fairly short-lived, and limited to the eight day period (November 13 - 20, 2008) he was housed in the mental crisis bed.

/ /

/ /

---

[4] A GAF score in the 21 – 30 range indicates behavior is considerably influenced by delusions or hallucinations or serious impairment, in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) or inability to function in almost all areas (e.g., stays in bed all day, no job, home, or friends) Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (Michael B. First ed., 4th ed. 2000) (DSM) at 32.

[5] A GAF score in the 41 – 50 range indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job, cannot work). DSM at 34.

***Petitioner is not Entitled to Equitable Tolling for the Remainder of the Statute of Limitations Period (November 21, 2008 to August 21, 2009)***

The records for the remainder of the statute of limitations period, which, allowing for eight days of equitable tolling, was extended to August 21, 2009, do not indicate Petitioner was prevented from filing his federal habeas petition due to extraordinary circumstances beyond his control. As explained above, Petitioner's mental health crisis ended on November 20, 2008, and Petitioner was stable for the remainder of that month. Petitioner's mental health continued to be strong in December 2008, when he was observed to be "quite stable." [MHR 1461.] Notes his psychologists made throughout the month indicate his orientation, thought processes and content were within normal limits. [MHR 1456, 1459, 1460.] On December 24, 2008, Petitioner expressed concern that his V.A. benefits would be cancelled and reported he was in the process of addressing the situation. [MHR 1459.] At that time he appeared to be psychiatrically stable and had no involuntary movements. [*Id.*] On December 30, 2008, Petitioner reported he was "doing well," was not experiencing any side effects from the medication, but felt his thinking was slow. [MHR 1455.] The psychiatrist who saw him that day noted Petitioner was not experiencing any side effects from medication, was alert and oriented and his thought process was reasonably clear. [*Id.*] Petitioner was assigned a GAF score of 50. [*Id.*] Petitioner attended multiple groups throughout the month where his cognition was consistently observed to be at an appropriate level. [MHR 1454, 1457-58.]

Petitioner's mental health continued to remain stable through January 2009. [MHR 1444-52.] Clinician progress notes made throughout the month indicate his orientation, memory, thought process and thought content were within normal limits. [MHR 1449-50, 1452.] On January 15, 2009, he reported he'd had difficulty sleeping and was having panic attacks but his new antidepressant prescription seemed to be helping. [MHR 1451.] He expressed

concern about transferring to a different prison and was experiencing involuntary movement in his hands and arms. [MHR 1450.] Later in the month, on January 22, 2009, Petitioner reported some depression, but said the depression subsided when he learned that he would remain in the EOP building. [Doc. No. 31 at 13; MHR 1449.] His psychologist noted Petitioner displayed no "symptoms of a major mental illness," appeared to by "psychiatrically stable" and had "good insight" into his mental illness. [MHR 1449.] On January 27, 2009, Petitioner reported increased anxiety, paranoia and frustration with his neighbor, who kicked the wall throughout the day. [Doc. No. 31 at 12; MHR 1446.] His psychologist observed Petitioner was in "some psychiatric distress," referring to an increase in paranoid delusional material. [*Id.*] Petitioner's thought content was positive for paranoid ideation; however, his attention, concentration and thought process were normal. [*Id.*] Petitioner requested an increase in his medication dosage and was referred to a psychiatrist, who met with him the same day. [*Id.*] The psychiatrist observed Petitioner's thought process to be linear and goal-directed and assigned him a GAF score of 55.[6] [Doc. No. 31 at 11; MHR 1445.] Petitioner displayed no abnormal involuntary movements that day. [MHR 1453.] He participated in multiple groups in January 2009, where his cognition was consistently rated as appropriate. [MHR 1444, 1447-48.]

Throughout the spring and summer of 2009, Petitioner continued to be mentally stable, did not exhibit any significant side effects from his medications and demonstrated he was capable of handling his personal matters. During the month of February, his treating clinicians regularly assessed his orientation, attention, memory, concentration, thought process and content to be normal. [MHR 1436-37, 1441-42.] On February 3, 2009, he reported he had moved to a

---

[6] "A GAF score between 51 and 60 indicates '[m]oderate symptoms [or] ... moderate difficulty in social, occupational, or school functioning.'" DSM at 34.

different cell, was not depressed, and was happy that he would remain in the EOP building. [Doc. No. 31 at 11; MHR 1443.] He told his psychologist "something" was found during his recent colonoscopy and he would sign a DNR request if the news were bad. [*Id.*] The psychologist noted Petitioner continued to progress in a positive fashion. [*Id.*] The following week Petitioner reported a decrease in involuntary movements and displayed improvement in psychiatric functioning. [Doc. No. 31 at 10; MHR 1442.] Throughout the month he was observed to be functioning within normal limits [MHR 1437, 1440-41] and on February 27, 2009, he was assigned a GAF score of 60 [MHR 1436]. Petitioner's cognition was to be deemed appropriate by the facilitators for all the groups he participated in that month. [MHR 1435, 1438-39.]

On March 5, 2009, Petitioner told the psychologist, "'Everything is fine. I got things situated.'" [MHR 1434.] During that meeting he was observed to be alert, oriented, with linear thought process, rational thought content, and normal attention, cognition and memory. [*Id.*] On March 17, 2009, he acted appropriately, talked freely and exhibited no incoherent thoughts, but displayed some paranoia about his medication. [MHR 1432.] Progress notes from two days later indicate Petitioner was calm and cooperative and exhibited no bizarre ideation except for his fear that someone was tampering with his medication. [MHR 1431.] On March 23, 2009, Petitioner reported that he was having panic attacks and wanting to isolate. [MHR 1430.] The following day he reported he was doing fairly well, discussed advanced directives with his psychiatrist, and agreed to consider leaving his body to science. [MHR 1429.] The psychiatrist noted Petitioner's tremors had stopped with the discontinuation of Depakote and assigned a GAF score of 65.[7] [*Id.*] Throughout

---

[7] A GAF score between in the 61 – 70 range indicates "some mild symptoms (e.g. depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g.,

the month Petitioner's cognition was rated as appropriate or oriented by group facilitators. [MHR 1423 – 27.]

In April 2009, Petitioner's cognition and behavior was reported to be normal [MHR 1422], his thinking was clear and rational and he displayed no psychiatric symptoms [MHR 1417-18]. On April 9, 2009, Petitioner reported "I am feeling good… and (am) not really having any mental health issues." [MHR 1422.] Three days later, on April 12, 2009, his psychologist observed Petitioner appeared somber and tense and reported he was having a problem getting his money, but remarked that he had it better than most. [MHR 1421.] On April 17, 2009, Petitioner again reported he was "doing very well" and that he wanted to donate his body to science, but was not sure if his wife would allow that. [MHR 1419.] He expressed a desire to execute a DNR and be an organ donor, to which the psychiatrist opined, "All of these are reasonable and the inmate is fully competent to make these decisions at this time." [*Id.*] Petitioner was assigned a GAF score of 70. [MHR 1420.] On April 27, 2009, his psychologist reported Petitioner appeared to be depressed, but his thinking was linear and logical. [MHR 1415.] His cognition was rated as appropriate or oriented in the groups he attended in April 2009. [MHR 1411-12, 1414, 1416.]

May 2009 progressed much in the same fashion. On May 6, 2009, Petitioner appeared to have improved since the prior meeting [MHR 1410] and on May 11, 2009, he was observed to be stable [MHR 1408]. Later in the month, on May 20, 2009, Petitioner reported he was continuing "to do well," but was concerned that he had not been able to get an advanced directive or a DNR in his chart. [Doc. No. 31 at 20; MHR 1406.] The psychiatrist noted he had previously written and approved Petitioner for this twice. [*Id.*] Petitioner also

---

occasional truancy, or theft within the household), but generally functioning pretty well.

reported his tremors were "completely gone" and he was "much more comfortable." [*Id.*] He was assigned a GAF score of 70. [Doc. No. 31 at 21; MHR 1407.] At the end of the month, on May 26, 2009, Petitioner complained he was having trouble tracking; however, his psychologist observed Petitioner's thinking to be logical. [MHR 1404.] Petitioner's cognition during the groups he attended that month was rated as oriented or appropriate. [MHR 1400-01, 1403.]

      In early June 2009, Petitioner informed his psychologist that he wanted to die, as opposed to spending another twenty-one years in prison, where he was likely to die anyway. [Doc. No. 31 at 16-17; MHR 1398-99.] On both occasions, his psychologist opined there was no discernable change in Petitioner's mental status. [*Id.*] On June 11, 2009, the psychiatrist noted Petitioner had refused his lithium for the past ten days because his current dosage caused him to sweat miserably in the hot weather, and he wanted the dosage lowered. [Doc. No. 31 at 14; MHR 1396.] He was assigned a GAF score of 70. [Doc. No. 31 at 15; MHR 1397.] Petitioner's medications were adjusted on June 13, 2009, at which time his psychiatrist felt Petitioner was in a hypomanic phase. [MHR 1384, 1394-95.] The remainder of the month was unremarkable. Petitioner was observed to be coherent and in touch with reality [MHR 1393], stable [MHR 1392], and on June 29, 2009, his psychologist reported the medication adjustment seemed to have improved Petitioner's condition [MHR 1389]. Petitioner's cognition during groups he participated in during June 2009 was rated by the facilitators as appropriate or oriented. [MHR 1386-88, 1390-91.]

      In July 2009, Petitioner was observed to be "cognitively intact," "doing very well," stable, not confused and had poor to fair insight and judgment. [MHR 1379, 1381-85.] On July 10, 2009, Petitioner was not experiencing any involuntary psychomotor activity, his thought process was linear and goal-directed and his thought content was rational. [MHR 1380.] On July 24, 2009, Petitioner was referred to a psychiatrist for a medication adjustment because he was anxious

17

16CV1803-AJB(JMA)

and restless. [MHR 1378.] It was noted he had mild to moderate involuntary tremors and was obviously uncomfortable, but his thought content was rational and goal-oriented and his judgment and insight were poor to fair. [MHR 1376-78, 1453.] He was assigned a GAF score of 65. [MHR 1376.] On July 29, 2009, reported the medication adjustment helped with his uncontrolled body movements. [MHR 1372.] His cognition during groups in July 2009 was rated as appropriate or oriented. [MHR 1370-71, 1373-75.]

Petitioner's mental health remained stable through August 2009. [MHR 1359-69.] On August 3, 2009, he was stable, had clear and linear thinking, and presented as bright and cheerful. [MHR 1369.] Petitioner was alert, oriented and coherent on August 10, 2009, as well as at a subsequent meeting on August 17, 2009. [MHR 1366-67.] On August 12, 2009, Petitioner made a slightly inappropriate comment during a group meeting in an attempt to be humorous, but quickly redirected when he noticed his comment had not been well received. [MHR 1363.] On August 14, 2009, Clark's cognition was appropriate in his anger management group. [MHR 1360-16.] On August 17, 2009, the psychologist wrote that he was stable. [MHR 1366.] In the final days of the limitations period, Petitioner was oriented and displayed appropriate cognition during a journaling group on August 18, 2009 [MHR 1364], during a social issues through literature group on August 19, 2009 [MHR 1363], and at anger management and current events groups he attended on August 21, 2009, the final date of the limitations period [MHR 1360-61.][8]

//

---

[8] Plaintiff's mental competency during the relevant time period is further evidenced by events that transpired, such as his efforts to obtain a DNR order; his psychiatrist's opinion that Petitioner was competent to make end of life decisions; Petitioner's refusal to take lithium because of the heat, indicating both his understanding of lithium's side effects and his right to refuse medication; and Petitioner's understanding as to he needed to take action with the VA in order not to lose his benefits.

Petitioner's mental status continued to be stable until September 10, 2009, when he was referred to the emergency room after suffering an anxiety attack and improved immediately thereafter. [MHR 1366, 1354-1362.] Even assuming Petitioner's mental state during this event rendered him incapable of filing his Petition, he could not receive the benefit of equitable tolling for this episode because once the limitations period ends, it cannot be revived.[9] *See e.g. Green v. White*, 223 F.3d 1001 (9th Cir. 2000).

In sum, the complete mental health records establish Petitioner suffers from mental illness and, at times, his medication has caused hand and arm tremors. With the exception of the eight days that passed during his mental health crisis (November 13 – 20, 2008), however, neither his mental illness nor medication side effects prevented him from understanding the need to timely file a federal petition or from taking steps to effectuate this filing.

Furthermore, although the Court's discussion has primarily focused on the whether Plaintiff's mental and physical impairments constitute an "extraordinary circumstance," the test for an equitable tolling claim is two part. Under the second part, a petitioner must show he was diligent in trying to timely file his habeas petition. *See e.g. Pace*, 544 U.S 418. Here, Petitioner has made any showing that he was diligent in pursuing his federal habeas claims and, thus, also does not satisfy the second element of his equitable tolling claim.

/ /

/ /

---

[9] Petitioner's mental health records for the 6 years, 10 months, and 14 days that passed between when the limitations period ended and when the Petition was filed (August 22, 2009 to July 6, 2016) indicate Petitioner's mental health was stable for significant periods of time and he had only a few short-lived episodes during which he was arguably not competent to file a federal habeas petition. As explained above, even if Petitioner suffered from episodes of impairment that prevented him from filing his Petition during this time period, they cannot toll the limitations period after it has ended.

### III. RECOMMENDATION

After a thorough review of the record in this matter, the undersigned magistrate judge finds Petitioner has not shown that he is entitled to tolling of the AEDPA's statute of limitations for a sufficient period of time to rending the filing of his Petition as timely. Accordingly, the undersigned magistrate judge hereby recommends Respondent's Motion to Dismiss be **GRANTED**.

This Report and Recommendation is submitted to the Honorable Anthony J. Battaglia, United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). **IT IS ORDERED** that not later than **March 13, 2018**, any party may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation**." IT IS FURTHER ORDERED** that any reply to the objections shall be served and filed not later than **March 20, 2018**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: February 26, 2018

Honorable Jan M. Adler
United States Magistrate Judge